UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONNA KAY SCRIVO,

                Petitioner,

                                Case Number 19-10730
v.                                  Honorable David M. Lawson

SHAWN BREWER,

                Respondent.

_____/

## <u>OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS</u>

Petitioner Donna Kay Scrivo was convicted of drugging and suffocating her adult son and dismembering his body. Her first-degree premeditated murder conviction earned her a life sentence without the possibility of parole. After unsuccessfully challenging her convictions on appeal in the Michigan courts, Scrivo filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. She argues that her lawyer's performance did not measure up to constitutional standards in several instances, the prosecutor committed misconduct that tainted the proceedings, and the evidence was not sufficient to prove her guilt. The state presented a compelling circumstantial case; and although the trial was not perfect, and the prosecutor crossed the line a few times into unprofessionalism, the state court's rejection of Scrivo's claims of error was consistent with federal law. The petition, therefore, will be denied.

I.

The gruesome details of the crime were summarized on direct appeal by the Michigan Court of Appeals:

-1-

Defendant's convictions arise from the death of her son, 32–year-old Ramsay Scrivo, and the dismemberment of his body, the remains of which were discovered in 12 pieces near Fred Moore Highway and Allington Road in St. Clair County. The prosecution presented evidence that defendant drugged her son with Xanax [a prescription drug used to treat anxiety, which can cause extreme drowsiness, confusion, and coma], strangled him, dismembered his body, and scattered the remains along the highway.

Defendant was living with the victim at the time of his death.  The victim's neighbors testified that they last saw him on January 24, 2014.  On January 30, 2014, defendant was observed in a silver SUV along Fred Moore Highway and Allington Road driving slowly and disposing of something from the SUV.  Earlier that day, and also on the previous day, defendant was seen by the victim's neighbors loading large garbage bags into her vehicle.  Later that day authorities found the victim's remains scattered in bags along Fred Moore Highway and Allington Road. Along with the victim's remains, authorities also found a power saw that was the same model number that witnesses recalled defendant purchasing from a Lowe's store earlier that week.  A subsequent search of the victim's home did not reveal any large blood stains, but investigators did testify to a strong smell of bleach and the existence of small blood stains.  One of the victim's neighbors also testified that between January 25 and January 30 she heard a saw being used and that during the same time, she smelled both a burning and chemical odor emanating from the victim's apartment.

The medical examiner who performed the victim's autopsy, Dr. Daniel Spitz, testified that the cause of death was asphyxiation and that, due to large amounts of Xanax in his system, he believed that the victim had been drugged before being killed.  Defendant had a prescription for Xanax and a search revealed 10.5 pills missing from her most recent prescription.  An analysis of defendant's and the victim's cell phone records also did not reveal any calls made from the defendant to the victim after January 24 despite several witnesses testifying that defendant asked them if they had seen the victim and defendant's filing of a missing person's report for the victim.

Defendant testified in her own defense.  According to her testimony, on the morning of January 26, 2014 she observed a masked man in the victim's room who said he was going to kill the victim.  Defendant testified that this man tied her to the bed and then brought her back into the victim's bedroom when he had finished killing the victim.  Defendant testified that the man remained five days but that she never saw his face due to the mask he was wearing.  Defendant stated that the man then made her help dispose of the victim's body threatening to harm further members of her family if she did not comply.

-2-

*People v. Scrivo*, No. 330292, 2017 WL 2664753, *1-2 (Mich. Ct. App. June 20, 2017) (footnotes omitted).

The jury did not accept the petitioner's defense and convicted her of first-degree premeditated murder, mutilation of a human body, and removing a body without medical examiner permission.  On direct appeal, Scrivo presented nearly the same claims she asserts here, which were rejected by the court of appeals.  *Id*. at *2-8.  The Michigan Supreme Court denied leave to appeal.  *People v. Scrivo*, 501 Mich. 982, 907 N.W.2d 563 (2018).

Scrivo's timely habeas corpus petition asserts these claims:

I.    She was denied her right to the effective assistance of counsel where trial counsel failed to object to numerous instances of prosecutorial misconduct, failed to call a Xanax expert witness, failed to call a weight or strength expert witness, failed to call a bruise expert witness, failed to call Jessica Drula as a witness, failed to request a mistrial, failed to object to the admission of the autopsy photos, failed to object to tainted evidence, and failed to persuade her not to testify.

II.   She was denied her right to a fair trial by the cumulative effect of the prosecutor's improper cross-examination of her regarding her right to remain silent and commenting on her right to remain silent, improper introduction of evidence merely to show that she was a bad person, and improper yelling and arguing with witnesses.

III.  The evidence was not sufficient for a rational trier of fact to find her guilty beyond a reasonable doubt.  The circumstantial evidence was not sufficient for a rational trier of fact to find beyond a reasonable doubt that she drugged her son with Xanax in order to render him unconscious, then strangled him, carried him to the bathroom, and put him in the bathtub.

Pet. at vii, ECF No. 1, PageID.22.

In his response, the warden argues that some of the instances of prosecutorial misconduct were not brought to the state court's attention by contemporaneous objection or on appeal, and

-3-

therefore they are subject to the defense of procedural default. The other claimed constitutional violations, he says, are meritless.

The "procedural default" argument is a reference to the rule that the petitioner did not preserve properly some of her claims in state court, and the state court's ruling on that basis is an adequate and independent ground for the denial of relief. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The Court finds it unnecessary to address the procedural question. It is not a jurisdictional bar to review of the merits, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The procedural defense will not affect the outcome of this case, and it is more efficient to proceed directly to the merits.

## II.

Certain provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). A federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

-4-

"Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotation marks and citations omitted).  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).  The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review.  Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (quotation marks omitted)).  The AEDPA imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010).

## A.

Scrivo argues that the state prosecutor, William Caltaldo, engaged in misconduct by questioning her and commenting on her post-arrest silence, arguing with and yelling at witnesses, and introducing improper character evidence, all that conduct deprived her of the right to a fair trial.  The Michigan Court of Appeals was critical of some of the prosecutor's conduct, but it found that the errors were harmless because of the strength of the evidence against Scrivo.  *Scrivo*, 2017 WL 2664753 at *2.

A prosecutor's misconduct will require habeas corpus relief when the conduct complained of "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (citing *Darden v. Wainwright*, 477 U.S. 168, 181 (1986), and calling *Darden* the "clearly established Federal law" on the issue).  *Parker* notes that "the *Darden* standard is a very general one," which permits state courts "more leeway . . . in reaching outcomes in case-by-case determinations[.]" *Id*. at 48 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  On habeas review, the AEDPA raises the bar even higher than the "high standard" set by *Darden*.  *Halvorsen v. White*, 746 F. App'x 489, 499 (6th Cir. 2018) (citing *Parker*, 567 U.S. at 48).  To obtain habeas relief, "[t]he misconduct must so clearly violate *Darden* that the state court's failure to identify it was not just erroneous, but 'objectively unreasonable.'"  *Id*. at 497 (citing *Williams*, 529 U.S. at 409).  *Darden* itself did not find unconstitutional a prosecutor's characterization of the defendant as an "animal" or his expressed wish that he "could see [the defendant] with no face, blown away by a shotgun."  *Darden*, 477 U.S. at 180, nn.11, 12.  Even where prosecutors' statements are so extreme as to be "universally condemned," the inquiry remains whether due process was denied.  *Id*. at 181.

1.

Cataldo's most serious transgression occurred when he cross-examined the petitioner about her post-arrest silence, actually criticizing her for invoking her *Miranda* rights.  Scrivo had testified on direct examination about a masked man that killed her son, a story she had not mentioned to the police until months later.  The following exchange then took place on cross-examination:

Q. You see, you were picked up on the night of January 31, 2014. You spoke to the police for two hours that night. You didn't tell them this story, did you?

-6-

A. No, sir.

. . .

Q. That, but you, we had to wait 16 months to hear this story about this intruder?

. . .

A. The night that the Detective [Margaret] Eidt walked me to the holder cell I was pretty crazed. But I do remember asking: Can you please talk to me tomorrow afternoon? And I got no response.

Q. Well, wasn't there a reason?

A. Then I asked my first attorney to please let me do, talk to them and do a polygraph test.

Q. You invoked Miranda.  We can't talk to you after you say that. That is why we don't come to you. They can't ask those questions.

Trial Tr. (May 18, 2015), ECF No. 16-10, PageID.2501, 2504.  And he returned to that theme during his closing argument:

Next, another thing, okay, point I was making during cross.  She sees the murderer for six days, gives the height, weight, sound of the voice, looks at his face. . . . Do you not think that those are significant number of clues?

. . .

But we sit on it instead. We play the martyr. She prefers to remain charged and 16 months before I hear the details, mother of the year. I don't think so.

*Id.* at PageID.2566-67.

This questioning and the argument were plain violations of the rule in *Doyle v. Ohio*, 426 U.S. 610 (1976), and the state court of appeals said as much.  *Scrivo*, 2017 WL 2664753, at *3.  In *Doyle*, the Supreme Court held that a prosecutor may not comment on a defendant's post-arrest silence in the case-in-chief, on cross-examination, or in closing arguments.  426 U.S. at 619-20; *see also United States v. Tarwater*, 308 F.3d 494, 511 (6th Cir. 2002).  But that rule is subject to

harmless error analysis, *Tarwater*, 308 F.3d at 511, and the court of appeals determined that the prosecutor's unconstitutional questioning and argument did not require a new trial for that reason, *Scrivo*, 2017 WL 2664753, at *3.

A federal habeas court also "must apply the harmless error standard" to *Doyle* violations. *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (citing *Eberhardt v. Bordenkircher*, 605 F.2d 275 (6th Cir. 1979)). On habeas review, an error is harmless unless it had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); *id.* at 637 (holding that the state's improper use of the defendant's post-*Miranda* silence to impeach his claim of accident was harmless because it did not have a substantial or injurious effect or influence upon the jury's verdict); *see also Fry v. Pliler*, 551 U.S. 112, 117-18 (2007) (confirming that the *Brecht* standard applies in "virtually all" habeas cases); *Ruelas v. Wolfenbarger*, 580 F.3d 403, 411 (6th Cir. 2009) (ruling that *Brecht* is "always the test" in the Sixth Circuit). That test is much more rigorous than the one applied on direct review. *See Chapman v. California*, 386 U.S. 18, 24 (1967) (holding that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt").

In addition, the state court's harmlessness decision is itself entitled to deference. *Davis v. Ayala*, 576 U.S. 257, 269 (2015). The habeas court may not grant relief unless the state court's "'*harmlessness determination itself* was unreasonable.'" *Ibid.* (citations omitted). The application of that principle is satisfied by adhering to *Brecht*'s teaching because where "the state court adjudicated [the petitioner's] claim on the merits, the *Brecht* test subsumes the limitations imposed

-8-

by AEDPA." *Id.* at 270.   In such cases, "a federal habeas court need not 'formal[ly]' apply both *Brecht* and 'AEDPA/*Chapman.*'"  *Id.* at 268.

The court of appeals concluded that the prosecutor's improper argument did not affect the outcome of the trial because of "the strength of the evidence in this case." *Scrivo*, 2017 WL 2664753, at *3.  To upset that holding on habeas review, this Court must have at least "grave doubt about whether a trial error of federal law" meets the *Brecht* threshold. *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995).  "'[G]rave doubt' about whether the error was harmless means that 'the matter is so evenly balanced that [the court] feels [it]self in virtual equipoise as to the harmlessness of the error.'"  *O'Neal v. Balcarcel*, 933 F.3d 618, 624 (6th Cir. 2019) (quoting *O'Neal*, 513 U.S. at 435).  A review of the record confirms that the state court's determination is entirely consistent with federal law.

The court of appeals summarized, and the record confirmed, a rather compelling circumstantial case against Scrivo.  The state presented evidence that the victim died from strangulation, had a significant amount of Xanax in his system, and was burned and dismembered with a saw and a knife post-mortem.  Trial Tr. (May 12, 2015), ECF No. 16-6, PageID.1552-1576, 1584-1585. The victim told his probation officer he was not taking Xanax, Trial Tr. (May 6, 2015), ECF No. 16-4, PageID.1070-1071, but Scrivo had a recently-filled Xanax prescription with at least 10 pills missing (from the maximum dosage that could be taken for the relevant time period), Trial Tr. (May 15, 2015), ECF No. 16-9, PageID.2229-2231, 2251-2252.  The victim's body parts and other items were found near Fred Moore Highway and Allington Road, Trial Tr. (May 7, 2015), ECF No. 16-5, PageID.1367-1373.  Scrivo had purchased the same type of saw that was used to

dismember the victim's body, and a saw was found close to his remains with his DNA on it.  *Id.* at PageID.1276-1278; Trial Tr. (May 12, 2015), ECF No. 16-6, PageID.1430-1434.

The victim's neighbor testified that she noticed a strange smell and heard saw noises coming from the victim's condominium during the time when the victim was missing.  Trial Tr. (May 13, 2015), ECF No. 16-7, PageID.1681-1682, 1686-1687.  The victim's condominium had a strong odor of bleach, bleach stains on the bedroom carpet, and charring in the bathtub.  Trial Tr. (May 12, 2015), ECF No. 16-6, PageID.1427-1429.  Scrivo herself was seen moving black bags from the victim's condominium into a silver SUV.  Trial Tr. (May 13, 2015), ECF No. 16-7, PageID.1734, 1765-1766.  And Scrivo was seen getting gas, driving a silver SUV, and dumping items in the area where the victim's remains and other items associated with the crime were found.  Trial Tr. (May 7, 2015), ECF No. 16-5, PageID.1330-1335, 1353-1362; Trial Tr. (May 12, 2015), ECF No. 16-6, PageID.1489-1497, 1510-1514; Trial Tr. (May 13, 2015), ECF No. 16-7, PageID.1656-1657, 1660-1662; Trial Tr. (May 15, 2015), ECF No. 16-9, PageID.2201-2203.  Scrivo's cell phone records also indicated that she was in that area at that time.  Trial Tr. (May 14, 2015), ECF No. 16-8, PageID.2045.

The evidence established that Scrivo removed the license plate from the silver SUV and donated the vehicle to a charity.  Trial Tr. (May 13, 2015), ECF No. 16-7, PageID.1735; Trial Tr. (May 7, 2015), ECF No. 16-5, PageID.1305-1308; Trial Tr. (May 14, 2015), ECF No. 16-8, PageID.2110-2114, 2128.  The victim's blood was subsequently found in the SUV.  Trial Tr. (May 13, 2015), ECF No. 16-7, PageID.1820-1822, 1861-62.  Scrivo was wearing gloves similar to those found at the site where the victim's remains were found when she reported the victim missing at the police station.  Trial Tr. (May 15, 2015), ECF No. 16-9, PageID.2224-2227.  Scrivo's DNA

was on a Coke bottle recovered from the scene where the victim's remains and other items were found.  Trial Tr. (May 12, 2015), ECF No. 16-6, PageID.1430; Trial Tr. (May 13, 2015), ECF No. 16-7, PageID.1863-1865.  Scrivo told the police that she had been calling the victim when he was missing, yet cell phone records showed no such calls.  Trial Tr. (May 14, 2015), ECF No. 16-8, PageID.2048-2052; Trial Tr. (May 15, 2015), ECF No. 16-9, PageID.2175.

This evidence stacks up heavily against Scrivo's unlikely defense theory.  There is little chance that the prosecutor's intemperate and unfortunate remarks about Scrivo's invocation of her *Miranda* rights had any effect on the jury's verdict, let alone a substantial or injurious one.  And the state court's finding of harmlessness does not provoke grave doubt about the application of the *Brecht* standard.

2.

That was not the last of prosecutor Cataldo's questionable trial tactics, however.  Scrivo asserts that he engaged in misconduct by introducing character evidence merely to show that she was a bad person.  That happened during the testimony of her sister-in-law Allison Furtaw, the testimony of defense witness Ann Cusmano, and during cross-examination of the petitioner.  Starting with the cross-examination, this exchange occurred when discussing Scrivo's relationship with her other son, Jason:

> Q. Okay. But now you're not afraid for Jason and the niece any more and the nephew?
>
> A. Do you see my son Jason here?
>
> Q. Hell, I haven't seen him since this case started.  He won't return my calls?
>
> A. You got that right.
>
> Q. Because he doesn't like you, and he thinks something else happened.

-11-

A. And he verbally told you that?

Q. Not me, but somebody else.

A. We're going with hearsay.

Q. Oh, your whole testimony is hearsay. Okay. Don't talk to me about hearsay.

Trial Tr. (May 18, 2015), ECF No. 16-10, PageID.2500-01.  Again, the state court of appeals criticized Cataldo's conduct but held that the sustained defense objection and subsequent curative instruction addressed the error adequately.  *Scrivo*, 2017 WL 2664753 at *3.

The state called Allison Furtaw as a witness.  She is the sister of Scrivo's deceased husband, who had died a few years earlier from complications of hepatitis when an infection set in.  Scrivo apparently had given her husband a B12 shot, and cellulitis had set in at the infection site.  Cataldo's questions about that circumstance implied that Scrivo was somehow at fault for the demise of her husband.  Cataldo also questioned Furtaw about Scrivo's loss of her job, suggesting that she had been terminated for misconduct.  The court of appeals found that evidence to be irrelevant, but it found no basis to reverse for prosecutorial misconduct because the prosecutor had a "colorable" basis for his questions of Furtaw.  *Scrivo*, 2017 WL 2664753 at *3-4.

Ann Cusmano testified for the defense that Scrivo was a good mother who loved her son and that it was unlikely she would have done him harm.  On cross examination, Cataldo began yelling at the witness and had to be admonished by the court to "control" his "tone."  Trial Tr. (May 15, 2015), ECF No. 16-9, PageID.2367.  He then stated, "Because in fact she is such a good mother that Jason wants nothing to do with her; won't take her phone calls, isn't coming back from New Orleans.  That is how good of a mother she is."  *Id.* at PageID.2367.  Following that outburst, Cataldo asked if Cusmano's own children were estranged from her, and when she answered yes,

he stated, "You are a great mother." *Id.* at PageID.2368-69.  The court of appeals found no basis to reverse in this exchange because Scrivo had placed her character in issue, and the state could ask questions challenging her character "as a mother."  *Scrivo*, 2017 WL 2664753 at *4.

As unprofessional as the prosecutor's conduct was here, this Court cannot say that the state courts' refusal to grant relief for the misconduct misapplied or contravened federal law.  A prosecutor may commit misconduct by arguing or implying that the defendant's bad character shows that she committed the crime charged.  *See Cristini v. McKee*, 526 F.3d 888, 899 (6th Cir. 2008) (citing *Hodge v. Hurley*, 426 F.3d 368, 384 (6th Cir. 2005); *Washington v. Hofbauer*, 228 F.3d 689, 700 (6th Cir. 2000)).  But prosecutorial misconduct will require habeas relief only if the conduct was so egregious that it rendered the entire trial fundamentally unfair based on the totality of the circumstances.  *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999) *overruled on other grounds by Lindh v. Murphy*, 521 U.S. 320 (1997).  Once a prosecutor's conduct is determined to be improper, as here, the court must decide whether the improper acts were so flagrant as to warrant relief.  *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006).  Flagrancy depends on four factors: 1) whether the actions "tended to mislead the jury or prejudice the defendant"; 2) whether the actions were isolated or represent a pervasive course of conduct; 3) whether the acts represent a deliberate attempt to affect the outcome of the case; and 4) the overall strength of the case. *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004).

Here, the first three factors tend to favor the petitioner.  Cataldo's antics were intended to prejudice the defense, and his actions were not isolated, but instead appeared to be a deliberate attempt to affect the outcome.  But the overarching factor, and one emphasized by *Parker*, *Darden*,

-13-

and *Brecht*, requires careful consideration of the strength of the case against the petitioner. That factor more than any other impacts the question whether due process was denied. As noted earlier, the prosecutor's conduct might be "universally condemned," but habeas relief is not appropriate where the petitioner received due process. *Darden*, 477 U.S. at 181.

And as discussed above, the state's circumstantial case was quite strong. The outcome likely would have been the same even without the prosecutor's improper questions and remarks. Moreover, the trial court instructed the jury about the proper consideration of the evidence, including the fact that the attorneys' statements, arguments, and questions are not evidence. Trial Tr. (May 18, 2015), ECF No. 16-10, PageID.2587. Jurors are presumed to follow the court's instructions, *Penry v. Johnson*, 532 U.S. 782, 799 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors . . . take an oath to follow the law as charged, and they are expected to follow it."), and the Court must presume they follow them when considering questioning of the petitioner and his yelling at Anne Cusmano. Even the improper injection of evidence about Scrivo's husband's death during the testimony of Furtaw would not be enough on this record to require issuance of the writ. The introduction of "other acts" evidence is not so extremely unfair that its admission violates due process. *See Dowling v. United States*, 493 U.S. 342, 352-54 (1990); *Bugh v. Mitchell*, 329 F.3d 496, 512-13 (6th Cir. 2003). It bears repeating that the strength of the state's case undercuts the argument that the prosecutor's misconduct rendered the trial fundamentally unfair.

-14-

3.

Scrivo also asserts that she is entitled to habeas relief due to the cumulative effect of the prosecutor's alleged misconduct. The Michigan Court of Appeals considered this claim on direct appeal and denied relief because "evidence of defendant's guilt was clearly overwhelming," and with "the trial court's curative instructions, we do not find sufficient prejudice to undermine confidence in the reliability of the jury's verdict." *Scrivo*, 2017 WL 2664753 at *8.

This decision faithfully applied federal law. As discussed above, the claim of prosecutorial misconduct must be evaluated on the totality of the circumstances. *Caldwell*, 181 F.3d at 736. None of the claims of prosecutorial misconduct warrant habeas relief on their own. And taken together, the strength of the evidence plainly shows that the prosecutor's improper conduct did not have a substantial or injurious effect or influence upon the jury's verdict. *Brecht*, 507 U.S. at 637.

The decisions of the state courts denying the petitioner relief on her prosecutorial misconduct claims were not contrary to federal law or amount to an unreasonable application of it.

B.

Scrivo argues that she was denied her constitutional right to the effective assistance of counsel because of a host of errors committed by her trial attorney: failing to object to numerous instances of prosecutorial misconduct, failing to call several expert witnesses, failing to call Jessica Drula as a witness, failing to request a mistrial, failing to object to the admission of the autopsy photos, failing to object to tainted evidence, and failing to persuade her not to testify at trial. Each is discussed below.

-15-

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. When counsel is ineffective, that right is abridged. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970).

An ineffective assistance of counsel claim has two components. A petitioner must show that counsel's performance was deficient, and that deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance meets the first element when "counsel's representation [falls] below an objective standard of reasonableness." *Id.* at 688. The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688) (quotation marks omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless a defendant demonstrates both deficient performance and prejudice, "it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

Success on ineffective assistance of counsel claims is relatively rare, because the *Strickland* standard is "'difficult to meet.'" *White*, 572 U.S. at 419 (quoting *Metrish v. Lancaster*, 569 U.S. 351, 357-58 (2013)). And under AEDPA, obtaining relief under *Strickland* is even more difficult because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (citations and quotation marks omitted). This doubly-deferential standard requires the Court to give "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013). "[T]he question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

1.

Although trial counsel objected to some of the prosecutor's improper conduct, he did not object to all of it. For one, he did not object to the prosecutor's comments and questions challenging Scrivo's post-arrest silence. For another, he did not object when the prosecutor introduced inadmissible and irrelevant evidence about Scrivo's character and inferred from his questioning of the petitioner that her son Jason believed that she was responsible for his brother's death. The Michigan Court of Appeals held that those lapses amounted to deficient performance, but it denied relief because of "the trial court's instruction that the lawyers' comments are not evidence and the overwhelming evidence of defendant's guilt." *Scrivo*, 2017 WL 2664753 at *5.

The determination about prejudice on the underlying claim of prosecutorial misconduct answers the argument on this claim as well, because "[t]he prejudice prong of the ineffective

-17-

assistance analysis subsumes the *Brecht* harmless-error review." *Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009).  The Court has determined that the prosecutor's conduct, while improper in certain respects, did not have a substantial and injurious effect on the jury verdict, as required by *Brecht* to obtain habeas relief.  So Scrivo cannot establish that she was prejudiced by trial counsel's failure to object to those instances of misconduct.  *See*, *e.g.*, *Bell v. Hurley*, 97 F. App'x 11, 17 (6th Cir. 2004).

The Michigan Court of Appeals's determination that Scrivo was not prejudiced by trial counsel's failures to object to the prosecutor's misconduct reasonably applied federal law.  *See Moreland v. Bradshaw*, 699 F.3d 908, 928-29 (6th Cir. 2012) (2013); *Cooey v. Coyle*, 289 F.3d 882, 895 (6th Cir. 2002).

2.

Next Scrivo is critical of her trial counsel for not enlisting the help of various expert witnesses to testify that Xanax was not injectable, and therefore it was unlikely that Scrivo could have forced or deceived the victim into ingesting enough Xanax to render him unconscious; that because of her diminutive size and strength, it was unlikely that she would have been able to strangle and move the victim from the bedroom to the bathtub; and that her bruising occurred earlier in the week before her arrest.  She also argues that her lawyer should have called a cell phone expert to rebut the state's expert witness who testified about the petitioner's and victim's cell phone usage around the time of the crimes.

Decisions as to what evidence to present and whether to call certain witnesses generally are presumed to be a matter of trial strategy, although such decisions must be reasonable.  *See Roe*

-18-

*v. Flores–Ortega*, 528 U.S. 470, 481 (2000).  The decision not to call witnesses or present other evidence may constitute ineffective assistance of counsel only when it deprives a defendant of a substantial defense.  *See Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).

The Michigan Court of Appeals acknowledged that rule and rejected this claim relating to the drug expert, weight and strength expert, and the bruising exert because the petitioner did not furnish any proof of what those experts might have said, concluding that "[s]he has failed to show that such expert witnesses would have affected the outcome of the trial.  *Scrivo*, 2017 WL 2664753 at *6.  The petitioner did not raise an argument about a cell phone expert on direct appeal.

The record does not describe what defense counsel did to explore the possibility that experts in these fields might be helpful.  As a general rule, defense counsel must conduct a reasonable investigation into the facts of a defendant's case or make a reasonable determination that such investigation is unnecessary.  *Wiggins*, 539 U.S. at 522-23; *Strickland*, 466 U.S. at 691; *Stewart v Wolfenbarger*, 468 F.3d 338, 356 (6th Cir. 2007).  The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning . . . guilt or innocence." *Towns v Smith*, 395 F.3d 251, 258 (6th Cir. 2005).

None of Scrivo's proposed experts would have had any direct evidence on guilt or innocence.  And it is not even apparent that their opinions would have been helpful or aligned with Scrivo's arguments on appeal or in this Court.  Because she has offered nothing to support a conclusion that any such testimony would have been valuable to her, we are left only to speculate on those opinions.  Conclusory allegations of ineffective assistance of counsel without any evidentiary support do not provide a basis for habeas relief. *Workman v. Bell*, 178 F.3d 759, 771

(6th Cir. 1998).   In the absence of such proof, Scrivo is unable to establish that her counsel performed deficiently or that he was prejudiced by the failure to call this defense witness to testify at trial.  *See Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007).

The state courts' similar conclusion was reasonable and did not misapply or contravene federal law.

3.

Scrivo also argues that trial counsel performed deficiently when he failed to call Officer Jessica Drula as a witness.  She says that Drula would have testified that the petitioner asked her to stand in front of a little man staring at her, even though there was no one behind Drula, while Drula was removing her handcuffs and that the petitioner then told Drula, "[T]hat little man in black looked just like the one that killed my son."  Scrivo argues that trial counsel should have offered Drula's testimony under the present sense impression exception to the hearsay rule under Michigan Rule of Evidence 803(1).

The Michigan Court of Appeals rejected this claim because the record did not support it. *Scrivo*, 2017 WL 2664753 at *6.  Defense counsel initially offered that testimony as a prior consistent statement, that is a non-hearsay statement, *see* Mich. R. Evid. 801(d)(1)(B), and when the trial court rebuffed that effort, he offered it again under Rule 803(1).  Trial Tr. (May 18, 2015), ECF No. 16-10, PageID.2544-2549.  The court of appeals's holding that there was no deficient performance here was consistent with federal law.  Defense counsel cannot be found ineffective for offering evidence that the trial court rejects.

4.

Scrivo asserts that trial counsel should have objected to the admission of prior testimony from witness Randy Simons, an unavailable witness whose preliminary examination testimony was read into the record.  Scrivo did not raise this issue in state court.  But because it has no merit, the Court will address it.

The Confrontation Clause bars out-of-court statements that are testimonial in nature unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness.  *Crawford v. Washington*, 541 U.S. 36, 68 (2004).  The Sixth Circuit has acknowledged "there is some question whether a preliminary hearing necessarily offers an adequate prior opportunity for cross-examination for Confrontation Clause purposes."  *Al-Timimi v. Jackson*, 379 F. App'x. 435, 437 (6th Cir. 2010) (citing *Vasquez v. Jones*, 496 F.3d 564, 577 (6th Cir. 2007)) (doubting whether "the opportunity to question a witness at a preliminary examination hearing satisfies the pre-*Crawford* understanding of the Confrontation Clause's guarantee of an opportunity for effective cross-examination") (internal quotation marks omitted).  But, "because there is room for reasonable debate on the issue," a state court's decision that a preliminary examination satisfies the "opportunity for cross-examination" requirement, "is necessarily beyond [a federal court's] power to remedy under § 2254, even if it turns out to be wrong." *Williams v. Bauman*, 759 F.3d 630, 636 (6th Cir. 2014) (citing *White v. Woodall*, 572 U.S. 415, 419 (2014)); *see also Weissert v. Palmer*, 699 F. App'x 534, 539 (6th Cir. Aug. 15, 2017) ("[T]here is no clearly established federal law holding that cross-examination at a preliminary hearing is insufficient for Confrontation Clause purposes.").

-21-

In this case, the record shows that Simons was working in another state and unavailable to testify at trial and the parties agreed to admit his preliminary examination testimony. *See* Trial Tr. (May 13, 2015), ECF No. 16-7, PageID.1653-1654.  The record also shows that the petitioner had an adequate opportunity and the same motive to question Simon at the preliminary examination. *See* Prelim. Exam. Tr. (Dec. 29, 2014), ECF No. 16-2, PageID.595-612.  No confrontation clause violation occurred, and trial counsel had no legitimate basis to object to the evidence.  Trial counsel cannot be deemed ineffective for failing to make a futile or meritless argument.  *Tackett v. Trierweiler*, 956 F.3d 358, 375 (6th Cir. 2020).

5.

Scrivo also asserts that trial counsel was ineffective by failing to request a mistrial when the penalties for the offenses were inadvertently disclosed to the jury in their instruction materials. It appears that the written jury instructions that were passed out to the jury inadvertently included the felony information, which recited the penalties.  The trial court discovered the error and retrieved the instructions, but not before four of the jurors read the penalties for the offenses.  The trial court instructed the jury not to consider the penalties.  The Michigan Court of Appeals rejected this claim on direct appeal, concluding that defense counsel's decision not to request a mistrial was reasonable in light of the curative instruction.  *Scrivo*, 2017 WL 2664753 at *6-7 (footnote omitted).

That determination was consistent with federal law.  A trial court has broad discretion to grant or deny a motion for a mistrial, and a mistrial is only warranted upon a showing of manifest necessity.  *See Arizona v. Washington*, 434 U.S. 497, 506-10 (1978) (mistrial due to deadlocked

-22-

jury); *Walls v. Konteh*, 490 F.3d 432, 436 (6th Cir. 2007); *Clemmons v. Sowders*, 34 F.3d 352, 354-55 (6th Cir. 1994).   "Manifest necessity" means a "high degree" of necessity.  *Arizona*, 434 U.S. at 506.  To establish that trial counsel was ineffective by failing to seek a mistrial, the petitioner must show that counsel engaged in unreasonable strategy and that there is a reasonable probability that such a mistrial motion would have been granted.  *Delaine v. United States*, 605 F. App'x 468, 471 (6th Cir. 2015).

Scrivo has not made that showing.  Trial counsel was aware of this issue and brought it to the trial court's attention.  The trial court inquired into the matter, questioned the jurors, determined that the appropriate remedy was to provide curative instructions to the jury, and instructed the jurors that they should not let possible penalties influence their decision.  *See* Trial Tr. (May 6, 2015), ECF No. 16-4, PageID.891-898.  Trial counsel's decision to accept this outcome and not move for a mistrial was a reasonable trial strategy.  No manifest necessity warranting a mistrial is disclosed in this record, and the trial court acted well within its discretion in instructing the jurors not to consider possible penalties in rendering their verdict.  Habeas relief is not warranted on this claim.

6.

Scrivo also asserts that trial counsel was ineffective by not objecting to the admission of the autopsy photographs.  But the record does not support this argument.  As the court of appeals observed, defense counsel had challenged the autopsy photos in a motion *in limine*, which was granted in part.  *Scrivo*, 2017 WL 2664753 at *7.  And under state evidence law, autopsy photographs, even gruesome ones, may be received in evidence when they are helpful to illustrate

-23-

the cause or manner of death or explain complex medical testimony.  *See People v. Unger*, 278 Mich. App. 210, 257, 749 N.W.2d 272, 303 (2008).  The court of appeals held, therefore, that defense counsel did not perform deficiently when he did not object to the remaining photos a second time at trial.  *Scrivo*, 2017 WL 2664753 at *7.

That decision was faithful to federal law.  Because the evidence was properly admissible under state law, trial counsel did not perform below standards by not objecting to the photos at trial.  *Tackett*, 956 F.3d at 375.  Habeas relief is not warranted on this claim.

7.

The petitioner also asserts that trial counsel was ineffective when he did not object to the admission of the evidence recovered from a second search of the victim's residence which the petitioner says was tainted because family member James Scrivo was allowed to walk through the crime scene.  The Michigan Court of Appeals rejected this claim on direct appeal, observing that the record indicated merely that James Scrivo was allowed into the condominium to recover the victim's father's ashes, which were in the kitchen, "but that he did not take or touch anything else." *Scrivo*, 2017 WL 2664753 at *7.  The court concluded that any objection to the evidence would have been futile.  *Ibid.*

This decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.  The petitioner neither alleges nor establishes with any specificity what evidence was tainted, how it prejudiced her defense, or how it affected the outcome at trial.  Her allegations are purely speculative and conclusory.  Conclusory allegations

-24-

cannot support habeas relief. *Workman*, 178 F.3d at 771, and defense counsel cannot be found deficient by not asserting a futile objection, *Tackett*, 956 F.3d at 375.

8.

Next, Scrivo argues that trial counsel was ineffective by failing to persuade her not to testify at trial. The court of appeals rejected this claim after explaining that the record demonstrated that Scrivo's rights about testifying and remaining silent were explained thoroughly to her. *Scrivo*, 2017 WL 2664753 at *7-8. She was told that if she testified, she would be subject to cross-examination. And she confirmed that "she wished to testify, that she had given it a lot of thought, and that she was certain." *Id.* at *7.

Once again, that decision faithfully applied federal law. A criminal defendant has a constitutional right to testify in his or her own defense or to refuse to do so. *Rock v. Arkansas*, 483 U.S. 44, 53 (1987). "The right to testify is personal to the defendant, may be relinquished only by the defendant, and the defendant's relinquishment of the right must be knowing and intentional." *United States v. Webber*, 208 F.3d 545, 550-51 (6th Cir. 2000). Counsel's role is to advise the defendant about whether to take the stand, but the final decision is left to the defendant. *Id*. at 551; *see also Jones v. Barnes*, 463 U.S. 745, 751 (1983). On habeas review, there is "a strong presumption that trial counsel adhered to the requirements of professional conduct and left the final decision about whether to testify with the client." *Hodge v. Haeberlin*, 579 F.3d 637, 639 (6th Cir. 2009).

The record shows that trial counsel advised the petitioner about her right to remain silent and her right to testify, and that she could be subject to cross-examination and impeachment with

-25-

her police statements if she testified.  She confirmed that she thought about it a lot and that she was certain that she wanted to testify at trial.  Trial Tr. (May 15, 2015), ECF No. 16-9, PageID.2371-2372.  Trial counsel cannot make the decision for his client, and he did all he was required to do in this case.  Habeas relief is not warranted on this claim.

9.

Lastly, Scrivo argues that she is entitled to habeas relief based upon the cumulative effect of trial counsel's alleged errors.  The Michigan Court of Appeals rejected this argument, explaining that "trial counsel's failure to object to two instances of the prosecutor's improper conduct did not prejudice defendant given the overwhelming evidence of defendant's guilt.  Accordingly, there was no unfair prejudice to accumulate.  *Scrivo*, 2017 WL 2664753 at *8.

That ruling comports with federal law.  The Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief."  *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002).  It is doubtful that a cumulative error argument is even addressable in a federal habeas corpus proceeding.  *See Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011) (citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005)); *see also Moreland v. Bradshaw*, 699 F.3d 908, 931 (6th Cir. 2012) (ruling that trial counsel cumulative error claim was not cognizable) (citing *Hoffner v. Bradshaw*, 622 F.3d 487, 513 (6th Cir. 2010).

\* \* \*

The petitioner has not established that she was denied the effective assistance of counsel as guaranteed by the Sixth Amendment.

-26-

C.

Scrivo asserts that she is entitled to habeas relief because the prosecution failed to present sufficient evidence to support her first-degree murder conviction. Rejecting this claim on direct appeal, the court of appeals held that "the evidence of defendant's guilt in this case was strong enough to preclude a finding of prejudice concerning defendant's claims of prosecutorial misconduct or ineffective assistance of counsel. Therefore, the evidence was certainly sufficient to justify a rational trier of fact's determination that defendant committed each element of the charged offenses." *Scrivo*, 2017 WL 2664753 at *8.

That holding likewise faithfully tracks federal law. It is well established that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). Under the Due Process Clause, the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). A federal court reviewing a state court conviction under the habeas corpus statute that is "faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Cavazos v. Smith*, 565 U.S. 1, 7 (2011).

On direct appeal, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443

U.S. at 319.  That rubric "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law," *id.* at 324 n.16, and through the framework of 28 U.S.C. § 2254(d), *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002).  The Sixth Circuit reads those cases as creating a gauntlet for state prisoners asserting a sufficiency-of-evidence challenge under the AEDPA: they must penetrate "two layers of deference to groups who might view facts differently" than a reviewing court on habeas review — the factfinder at trial and the state court on appellate review.  *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

Under Michigan law, first-degree premeditated murder requires proof that the defendant intentionally killed the victim and that the killing was premeditated and deliberate.  Mich. Comp. Laws § 750.316; *People v. Taylor*, 275 Mich. App. 177, 179, 737 N.W.2d 790, 793 (2007); *People v. Kelly*, 231 Mich. App. 627, 642, 588 N.W.2d 480, 488 (1998).  Premeditation and deliberation may be established by evidence showing "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide."  *People v. Schollaert*, 194 Mich. App. 158, 170, 486 N.W.2d 312, 318 (1992); *see also People v. Abraham*, 234 Mich. App. 640, 656, 599 N.W.2d 736, 745 (1999).  Additionally, as with any crime, the prosecution must prove beyond a reasonable doubt that the defendant committed the charged offense.  *People v. Oliphant*, 399 Mich. 472, 489, 250 N.W.2d 443, 449 (1976); *People v. Yost*, 278 Mich. App. 341, 356, 749 N.W.2d 753, 767 (2008).  Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense, *People v. Nowack*, 462 Mich. 392, 399-400, 614 N.W.2d 78, 81 (2000); *People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177, 180 (1993), including the identity of the perpetrator, *Dell v. Straub*, 194 F. Supp. 2d 629, 647 (E.D.

Mich. 2002), and intent or state of mind, *People v. Dumas*, 454 Mich. 390, 398, 563 N.W.2d 31, 34 (1997).

Scrivo argued on direct appeal, and repeats the argument here, that that the prosecution failed to prove how the victim ingested Xanax and how she could have strangled and moved the victim. But as the court pf appeals explained, "the prosecution was not required to prove the exact details of how defendant committed the crime." *Scrivo*, 2017 WL 2664753 at *8. Instead, as noted in detail earlier, the prosecution presented evidence that the victim died from strangulation, had a significant amount of Xanax in his system, Scrivo had a Xanax prescription with at least 10 pills missing. The victim's body was burned and dismembered with a saw and knife, and the petitioner purchased the same type of saw that was used to dismember the victim's body and was found close to his remains with his blood on it. A neighbor noticed a strange smell and heard saw noises coming from the victim's condominium during the time when the victim was missing, the victim's condominium had a strong odor of bleach, bleach stains on the bedroom carpet, and charring in the bathtub. Scrivo was seen moving black bags from the victim's condominium into a silver SUV, which she was seen fueling and driving. And she was seen dumping items in the area where the victim's remains were found. Her cell phone confirmed that she was in the area at that time. Scrivo removed the license plate from the silver SUV and donated the vehicle. The victim's blood was subsequently found in the SUV, and Scrivo was wearing gloves similar to those found at the site where the victim's remains were found when she reported him missing at the police station. The petitioner's DNA was found on a Coke bottle recovered from the area where the victim's remains were found, and cell phone records showed that the petitioner never called the victim while he was missing despite her claims to the contrary. This direct and circumstantial evidence

amply support an inference of guilt of all the elements of the crimes charged and was sufficient to support the jury's guilty verdict.

Scrivo challenges the credibility of the witnesses and the jury's evaluation of the testimony and evidence presented at trial. However, it is the job of the fact-finder at trial, not a federal habeas court, to resolve evidentiary conflicts. *Jackson*, 443 U.S. at 326; *Martin*, 280 F.3d at 618; *see also Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."). The jury's verdict and the Michigan Court of Appeals's decision affirming that verdict were reasonable. The evidence presented at trial, viewed in a light favorable to the prosecution, established beyond a reasonable doubt that the petitioner committed first-degree premeditated murder (as well as the offenses of mutilation of a human body and removing a body without medical examiner permission).

III.

None of the petitioner's claims presents a basis to issue a writ of habeas corpus under 28 U.S.C. § 2254(d). The state courts' decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that she is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson<br>DAVID M. LAWSON

Dated: March 7, 2022                                    United States District Judge

-30-